109 Cal.App.2d 310 (1952)
240 P.2d 718
CONSOLIDATED PHOTOGRAPHIC INDUSTRIES, INC. (a Corporation) et al., Respondents,
v.
ROBERT MARKS et al., Defendants; ATLAS PHOTOGRAPHIC INDUSTRIES, INC. (a Corporation) et al., Appellants. WINSTON E. GRIFFITH et al., Respondents,
v.
ROBERT MARKS et al., Defendants; ATLAS PHOTOGRAPHIC INDUSTRIES, INC. (a Corporation) et al., Appellants.
Docket Nos. 18550, 18551.
Court of Appeals of California, Second District, Division Two.
February 18, 1952.
*311 Kenneth N. Chantry and Gerson Marks for Appellants.
Warner, Peracca & Cowan and Keatinge, Arnold & Zack for Respondents.
MOORE, P.J.
By the judgment herein Robert Marks was "enjoined and restrained until November 1, 1952, from engaging in the photo finishing business in the County of Los Angeles." Atlas Photographic Industries, Inc. was enjoined from employing Marks "as an officer, agent or otherwise" and from servicing specified photographic accounts in Los Angeles County. Both have appealed on the grounds that Mr. Marks' covenant not to compete with his vendee is void, and that section 16601 of the Business and Professions Code does not protect respondents' prior business from competition by Marks or his codefendants.
On October 27, 1947, appellant Marks as the sole owner of a photofinishing concern operating under the fictitious name of Twentieth Century Photo Laboratories entered into a written agreement for the sale of such business including *312 its tangible assets and good will to Twentieth Century Photo Laboratories, Inc., a corporation, hereafter referred to as Twentieth Inc. In that agreement Marks also covenanted not to engage in the photofinishing business in Los Angeles County for a period of five years.
Twentieth Inc. was formed for the specific purpose of acquiring Marks' business including his good will. Its outstanding stock is held in equal shares by respondents Griffith Photo Service and Monarch Photo Service. Both Griffith and Monarch at that time were copartnerships. Each group had been separately engaged in the photofinishing business in Los Angeles County for many years.
Shortly after the sale was completed it was determined that Twentieth's facilities were inadequate for the proper operation of its business and thereafter all processing of Twentieth's accounts was done at the plants of Griffith and Monarch. About March 1, 1948, Twentieth discontinued entirely operations under its own name and sold all its assets to Griffith and Monarch. Such assets including photofinishing accounts were divided equally between the two shareholders.
Until August, 1950, Marks engaged in related business enterprises outside Los Angeles County. For a portion of this period he was in Monarch's employ servicing out-of-town accounts. On the last-mentioned date, however, Marks caused defendant Atlas to be organized, and at the time of suit was an officer. Also, he was owner of 50 per cent of its outstanding stock. Atlas immediately commenced operation of a photofinishing business in Los Angeles County in direct competition with Monarch and Griffith.
Thereafter these actions were instituted to restrain the operations of Marks and his corporations. They were tried together and separate judgments were entered in favor of both plaintiffs. In demanding a reversal, Marks and Atlas contend that neither Monarch nor Griffith has "title to the goodwill" of the original Marks' business transferred to Twentieth. This contention rests upon the hypothesis that good will cannot exist detached from an active business; that the good will involved herein was destroyed when Twentieth Inc. ceased its operations; that in any event such good will was never transferred to respondents because the going business was not transferred to them. Despite appellants' clever analysis of the intangible element of good will and their fervent argument in support thereof they have not changed the judgment of this court. The decrees here on review are well fortified *313 by the agreed statement, by the statutes and by the intendments arising from the facts and the conclusions. Contrary to the argument advanced respondents are entitled to the benefit of Marks' covenant with Twentieth Inc., to refrain from engaging in a competing photo business.
By statute (Bus. & Prof. Code, § 16601) it is provided that one who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a limited area and that such covenant is effective "so long as the buyer, or any person deriving title to the good will ... from him, carries on a like business therein." Such agreements are valid and enforceable as exceptions to the general policy that all contracts whereby one is restrained from engaging in a lawful trade or business are void. (Bus. & Prof. Code, § 16600.)
Appellants' contention that the good will of the original firm has been destroyed and that therefore Marks is free to disregard his solemn contractual promise to Twentieth Inc. is without support in reason or authority. [1] The good will of a business is defined as the "expectation of continued public patronage." (Bus. & Prof. Code, § 14100.) This asset was taken over by Twentieth Inc. upon its purchase from Marks. Since it was thereafter properly assigned and conveyed by means of successive valid transfers (Graca v. Rodrigues, 33 Cal. App. 296, 298 [165 P. 1012]) there is no question but that respondents as assignees from Twentieth Inc. should be able to enforce Marks' negative covenant.
Section 16601 does not require the buyer or his successor to maintain operation of the same identical business sold by the covenanting party. There is no requirement therein that it be conducted under the same name as previously utilized or that the same type of business organization be employed, since the last cited section requires only that a "like business" be carried on.
Respondents took over the photofinishing accounts held by Marks. For a time they were serviced nominally by Twentieth Inc. though the actual processing from the inception has been done in the Griffith and Monarch laboratories. Presumably these accounts are still being handled by respondents. In short, respondents took over the Marks business in its entirety  its physical assets and its "expectation of continued public patronage." There has been virtually no change in the conduct of Twentieth's operations from the time of the original sale. As a matter of fact, members of the Griffith *314 and Monarch copartnerships and their successor corporations are the real parties in interest. Also they are essentially the beneficiaries of Marks' agreement. Surely this was known to and in the contemplation of Marks at the time he executed the agreement of sale. He is therefore in no position now to complain of the enforcement of his own covenant. Respondents thus come within the letter and spirit of section 16601 and are entitled to equitable relief to compel performance of appellant's promise.
[2] Appellant Atlas Photographic Industries has also filed its own brief wherein it attacks three findings as being wholly unsupported by the evidence. The findings in question are that (1) appellant Marks "organized or caused to be organized" the Atlas concern, and (2) Marks solicited certain named Griffith and Monarch customers for Atlas. On the basis of such findings Atlas was enjoined from employing Marks and from continuing the servicing of the designated accounts. The attack on the first finding is wholly unjustified in view of appellants' admission in their answers that Marks caused Atlas' organization.
However, the criticism of the other finding made in both actions is well taken. The record does not reveal evidence to support the determination that Marks solicited the specified customers (with the exception of Ramona Pharmacy) on behalf of Atlas or that others under his direction and control did so. [3] Respondents have not pointed to any direct evidence in support of such finding but rather argue that Marks as vice president, director and holder of one half of Atlas' outstanding stock had complete control of the corporation and that therefore Atlas was a mere instrumentality of Marks. However, such factors do not of themselves support a finding that Atlas was the alter ego of Marks or that the corporation was only an instrumentality by which he sought to evade his agreement. [4] There is neither affirmative proof nor direct inference from competent evidence to show such unity of interest and ownership as would indicate that the Atlas corporation and Marks are effectually the same. In the absence of such proof the corporation will be regarded as a separate entity. (Judelson v. American Metal Bearing Co., 89 Cal. App.2d 256, 263 [200 P.2d 836].) Since the record discloses neither pleading nor proof that Atlas was a mere instrumentality of Marks or that he owned all the capital stock of the corporation, it must be dealt with as a distinct entity. (Ibid.) The existence of a corporation *315 separate from its stockholders or officers cannot be destroyed upon mere suspicion or surmise. In the absence of actual evidence as to Marks' control and dominion over Atlas' activities and in view of the fact that others have supplied as much capital as did he and that others apparently were also active in its operations, it would be gross error to conclude that Atlas and Marks are in such unity as to justify an injunction against Atlas' servicing respondents' former accounts. Therefore, without altering the judgments insofar as they affect the other defendants, they are now to be amended with respect to appellant Atlas.
It is therefore ordered that the judgment in action 18550 insofar as it affects appellant Atlas be modified by striking therefrom paragraph 3; that paragraph 3 of the judgment in action 18551 insofar as it affects appellant Atlas be stricken and that in lieu thereof the following be substituted:
"3. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant Atlas Photographic Industries Inc. be and it is hereby enjoined from further servicing or accepting the patronage of Ramona Pharmacy of Monterey Park, California."
As thus modified the judgments are affirmed.
McComb, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied April 17, 1952.